UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

DEBRA M.,

                              Plaintiff,

v.                                                                    5:17-CV-01359

                                                                      (MAD/TWD)

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                                  OF COUNSEL:

LAW OFFICE OF CHARLES E. BINDER        CHARLES E. BINDER, ESQ.
AND HARRY J. BINDER, LLP
*Attorneys for Plaintiff*
485 Madison Avenue, Suite 501
New York, New York 10022

HON. GRANT JAQUITH                            PADMA GHATAGE, ESQ.
United States Attorney for the                  Special Assistant United States Attorney
  Northern District of New York
*Attorney for Defendant*
James T. Foley U.S. Courthouse, Rm. 218
Albany, New York 12207

OFFICE OF GENERAL COUNSEL              STEPHEN P. CONTE, ESQ.
Social Security Administration                   Chief Counsel, Region II
26 Federal Plaza, Room 3904
New York, New York 10278

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## <u>REPORT AND RECOMMENDATION</u>

    This matter was referred to the undersigned for report and recommendation by the

Honorable Mae A. D'Agostino, United States District Judge, pursuant to 28 U.S.C. § 636(b) and

Northern District of New York Local Rule 72.3.  This case has proceeded in accordance with

General Order 18 of this Court which sets forth the procedures to be followed when appealing a

denial of Social Security benefits.  Both parties have filed briefs.  Oral argument was not heard.

For the reasons discussed below, the Court recommends that the decision of the Commissioner

be affirmed and the Complaint (Dkt. No. 1) be dismissed.

## I.    BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Debra M. was born on January 20, 1954, and lives with her husband.

(Administrative Transcript at 46.[1])  She received her GED, and also obtained a nursing aide's

certification in 2009.  (T. at 47.)  Plaintiff reported past work as a heat treat operator in a surgical

needle factory which she performed for thirty (30) years.  (T. at 48, 60, 305-06.)  She stopped

working because "they closed the shop."  (T. at 54.)  Plaintiff has not worked since November

2008.  (T. at 48.)  She alleges disability due to diabetes, hypertension, and hyperlipidemia.  (T. at

304.)

On April 8, 2009, Plaintiff protectively filed an application for social security disability

benefits, alleging disability as of November 1, 2008.  (T. at 251-52.)  The application was denied

on May 6, 2009.  (T. at 111-18.)  Thereafter, Plaintiff filed a written request for a hearing on

June 11, 2009.  (T. at 119.)  A hearing was held on September 29, 2010, before Administrative

Law Judge ("ALJ") Jeffrey Jordan.  (T. at 42-71.)  At the hearing, Plaintiff was represented by

Carolyn Costello, a non-attorney representative.  *Id*.  On October 19, 2010, the ALJ issued a

decision finding that Plaintiff was not disabled.  (T. at 90-100.)  The ALJ's decision was

remanded for a new hearing by the Appeals Council in an Order dated May 19, 2011.  (T. at 104-

---

[1]  The Administrative Transcript is found at Dkt. No. 6.  Citations to the Administrative Transcript will be
referenced as "T." and the Bates-stamped page numbers as set forth therein will be used rather than the numbers
assigned by the Court's CM/ECF electronic filing system.

07.)  A second hearing was held before ALJ Elizabeth W. Koennecke on November 9, 2011.  (T. at 72-88.)  ALJ Koennecke, in a decision dated December 8, 2011, found Plaintiff disabled since July 13, 2011, but not disabled for the claimed period prior to that date from November 1, 2008, to July 12, 2011.  (T. at 13-36.)  The Appeals Council denied review on November 30, 2012.  (T. at 1-4.)  Thereafter, Plaintiff timely commenced an action in this United States District Court which was remanded on consent of the parties by Order dated August 9, 2013.  (T. at 641-42.)  On July 17, 2015, the Appeals Council issued a remand Order instructing the ALJ to reconsider Plaintiff's disability between November 1, 2008, and July 12, 2011, and affirmed the finding of disability beginning July 13, 2011.  (T. 646-50.)  Plaintiff was provided an opportunity to submit further medical evidence for consideration which was received by the Social Security Administration ("SSA"); however, Plaintiff did not request a supplemental hearing although she was given the opportunity to do so.  (T. at 745-46, 766, 776-829.)  ALJ Koennecke, in a second decision dated October 15, 2015, again found Plaintiff not disabled for the period from November 1, 2008, to July 12, 2011.  (T. at 553-87.)  On April 21, 2017, the Appeals Council denied review of the October 15, 2015, decision.  (Dkt. No. 546-52.)  The Plaintiff commenced this action on December 14, 2017, after a permitted extension of time.  (T. 541-42; Dkt. No. 1.)

## II.    APPLICABLE LAW

### A.    Standard for Benefits[2]

To be considered disabled, a plaintiff seeking SSI disability benefits must establish that he or she is "unable to engage in any substantial gainful activity by reason of any medically

---

[2]  While the SSI program has special economic eligibility requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. § 1382c(a)(3) (SSI) and Title II, 42 U.S.C. § 423(d) (Social Security Disability Insurance), are identical, so that "decisions under these sections are cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d Cir. 1983) (citation omitted).

determinable physical or mental impairment which can be expected to result in death or which

has lasted or can be expected to last for a continuous period of not less than twelve months." 42

U.S.C. § 1382c(a)(3)(A) (2015). In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. § 1382c(a)(3)(B).

Acting pursuant to its statutory rulemaking authority (42 U.S.C. § 405(a)), the SSA

promulgated regulations establishing a five-step sequential evaluation process to determine

disability. 20 C.F.R. § 404.1520 (2012). Under that five-step sequential evaluation process, the

decision-maker determines:

> (1) whether the claimant is currently engaged in substantial gainful
> activity; (2) whether the claimant has a severe impairment or
> combination of impairments; (3) whether the impairment meets or
> equals the severity of the specified impairments in the Listing of
> Impairments; (4) based on a "residual functional capacity"
> assessment, whether the claimant can perform any of his or her
> past relevant work despite the impairment; and (5) whether there
> are significant numbers of jobs in the national economy that the
> claimant can perform given the claimant's residual functional
> capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or

non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*,

540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v.*

*Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir.

1996)).  If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the

defendant-Commissioner at the fifth step to prove that the plaintiff-claimant is capable of

working.  *Id.*

      **B.**    **Scope of Review**

      In reviewing a final decision of the Commissioner, a court must determine whether the

correct legal standards were applied and whether substantial evidence supports the decision.

*Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted); *Rosado v.

Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing *Johnson v. Bowen*, 817 F.2d 983, 985

(2d Cir. 1987)).  A reviewing court may not affirm the ALJ's decision if it reasonably doubts

whether the proper legal standards were applied, even if the decision appears to be supported by

substantial evidence.  *Johnson*, 817 F.2d at 986.

      A court's factual review of the Commissioner's final decision is limited to the

determination of whether there is substantial evidence in the record to support the decision.  42

U.S.C. § 405(g) (2015); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  An ALJ must set

forth the crucial factors justifying his findings with sufficient specificity to allow a court to

determine whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d

241, 248 (N.D.N.Y. 2010);[3] *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial

evidence has been defined as 'such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion.'"  *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d

---

[3] On Lexis, this published opinion is separated into two documents.  The first is titled *Roat v. Barnhart*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010).  It includes only the district judge's short decision adopting the magistrate judge's report and recommendation.  The second is titled *Roat v. Comm'r of Soc. Sec.*, 717 F. Supp. 2d 241, 2010 U.S. Dist. LEXIS 55442 (N.D.N.Y. June 7, 2010).  It includes only the magistrate judge's report and recommendation.  Westlaw includes both the district court judge's decision and the magistrate judge's report and recommendation in one document, titled *Roat v. Barnhart*, 717 F. Supp. 2d 241 (N.D.N.Y. 2010).  The Court has used the title listed by Westlaw.

Cir. 1988) (citations omitted).  It must be "more than a mere scintilla" of evidence scattered

throughout the administrative record.  *Featherly*, 793 F. Supp. 2d at 630; *Richardson v. Perales*,

402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight." *Williams*, 859 F.2d at 258 (citations omitted).  If supported by substantial

evidence, the ALJ's findings must be sustained "even where substantial evidence may support

the plaintiff's positions and despite that the court's independent analysis of the evidence may

differ from the [ALJ's]." *Rosado*, 805 F. Supp. at 153.  A reviewing court cannot substitute its

interpretation of the administrative record for that of the Commissioner if the record contains

substantial support for the ALJ's decision. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir.

1982).

## III.    THE ALJ'S DECISION

The ALJ found Plaintiff has the following severe impairments: diabetes mellitus and right

shoulder disorder.  (T. at 561.)  She also found Plaintiff did not have an impairment or

combination of impairments that meets or medically equals the severity of one of the listed

impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (T. at 565-66.)  The ALJ then

determined Plaintiff has the residual functional capacity ("RFC") to perform light duty work for

the period from November 1, 2008, to July 12, 2011, with additional limitations including that

Plaintiff:

> could lift and carry up to 20 pounds occasionally and 10 pounds
> frequently with her left non-dominant upper extremity; could carry
> 10 pounds occasionally with her right dominant upper extremity;
> needed to avoid lifting or carrying at or above shoulder level

> carrying and reaching with right dominant upper extremity; could
> stand or walk, in combination, for 6 hours in an 8-hour workday,
> but no more than 20-25 minutes at one time before alternating to
> sitting for about 15 minutes; could sit for 6 hours total in an 8-hour
> workday; needed to avoid pulling with her right dominant upper
> extremity; needed to avoid balancing or climbing on ladders,
> ropes, and scaffolds, but could perform other postural activities on
> an occasional basis; and needed to avoid constant and repetitive
> gross manipulation with her right dominant upper extremity.

(T. at 567.)  In reaching this conclusion, the ALJ afforded "little weight" to the opinion of

Plaintiff's treating physician, Barbara Mols-Kowalczewski, M.D., and "no weight" to the

opinion of treating provider Laura Martin, D.O.  (T. at 572-75.)  Plaintiff was unable to perform

past relevant work, but she had skills from her work that were transferrable to other work.  (T. at

576-81.)  After considering Plaintiff's age, education, work experience, and RFC, the ALJ found

there are jobs existing in significant numbers in the national economy Plaintiff can perform.  *Id*.

The ALJ concluded she was not disabled from November 1, 2008, to July 12, 2011.  (T. at 581.)

## IV.    THE PARTIES' CONTENTIONS

Plaintiff claims the ALJ's decision was not supported by substantial evidence because the

ALJ (1) allocated inadequate weight to the opinions of Plaintiff's treating physicians; (2)

improperly determined Plaintiff's onset date of disability; (3) incorrectly determined Plaintiff's

credibility; and (4) improperly conducted the Step Five analysis.  (Dkt. Nos. 8, 14.)  Defendant

argues the ALJ applied the correct legal standards and substantial evidence supports her decision.

(Dkt. No. 11.)

## V.    ANALYSIS

### A.    Opinion Evidence and the RFC Determination

Plaintiff argues the ALJ did not comply with the remand Order of the Appeals Council

and allocated inadequate weight to Plaintiff's treating physicians' medical opinions in

contravention of the so-called "treating physician rule" and its caveats.  (Dkt. No. 8 at 11.[4])  In response, the Commissioner argues the ALJ properly complied with the Appeal Council's remand Order and properly evaluated all of the medical evidence.  (Dkt. No. 11 at 6.)

A claimant's RFC is the most she can do despite her limitations.  20 C.F.R. § 404.1545(a)(1).  RFC is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis, and the RFC assessment must include a discussion of the individual's abilities on that basis.  "A regular and continuing basis means eight hours a day, for five days a week, or an equivalent work schedule."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quotations omitted)).

It is the ALJ's job to determine a claimant's RFC, and not to simply agree with a physician's opinion.  20 C.F.R. § 404.1545  In determining the RFC, the ALJ can consider a variety of factors including a treating physician's or examining physician's observations of limitations, the claimant's subjective allegations of pain, physical and mental abilities, as well as the limiting effects of all impairments even those not deemed severe.  20 C.F.R. § 404.1545(a)(3).  Age, education, past work experience, and transferability of skills are vocational factors to be considered.  *Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).  Physical abilities are determined by evaluation of exertional and nonexertional limitations.  Exertional limitations include the claimant's ability to walk, stand, lift, carry, push, pull, reach, and handle.  20 C.F.R. § 404.1569a(b).  Nonexertional limitations include mental impairments and difficulty

---

[4] Page references to the parties' briefs identified by docket number are to the numbers assigned by the Court's CM/ECF electronic docketing system.

performing the manipulative or postural functions of some work such as reaching, handling, stooping, climbing, crawling, or crouching. *Id*. §404.1569a(c).

The ALJ "is not required to accept the claimant's subjective complaints without question; he may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Once the ALJ has resolved a claimant's complaints of pain, he can then evaluate exertional and nonexertional limitations. *Lewis v. Apfel*, 62 F. Supp. 2d 648, 658 (N.D.N.Y. 1999).

The RFC can only be established when there is substantial evidence of each physical requirement listed in the regulations. *Whittaker v. Comm'r of Soc. Sec.*, 307 F. Supp. 2d 430, 440 (N.D.N.Y. 2004) (citation omitted). "In assessing RFC, the ALJ's findings must specify the functions a plaintiff is capable of performing; conclusory statements regarding plaintiff's capacities are not sufficient." *Roat*, 717 F. Supp. 2d at 267 (citation omitted). "RFC is then used to determine the particular types of work a claimant may be able to perform." *Whittaker*, 717 F. Supp. 2d at 440.

1.    Treating Physician Rule

The medical opinions of a claimant's treating physician are generally given more weight than those of other medical professionals. "If . . . a treating source's opinion . . . is well-supported by medically acceptable clinical and laboratory techniques and is not inconsistent with other substantial evidence . . . [it] will [be] give[n] controlling weight." 20 C.F.R. § 404.1527(c)(2). "Medically acceptable techniques include consideration of a patient's report of complaints, or the patient's history, as essential diagnostic tools." *Green-Younger v. Barnhart*, 335 F.3d 99, 107 (2d Cir. 2003). Generally, the longer a treating physician has treated the claimant and the more times the claimant has been seen by the treating source, the more weight

the Commissioner will give to the physician's medical opinion. *Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008).

An opinion from a treating source that the claimant is disabled cannot itself be determinative. *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999). However, a lack of specific clinical findings in the treating physician's report is not, by itself, a reason to justify an ALJ's failure to credit the physician's opinion. *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998) (citing *Schaal v. Apfel*, 134 F.3d 496 (2d Cir. 1998)).

"An ALJ who refuses to give controlling weight to the medical opinion of a treating physician must consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart,* 362 F.3d 28, 32 (2d Cir. 2004) (citation omitted). This analysis must be conducted to determine what weight to afford any medical opinion. 20 C.F.R. § 404.1527(c). This is necessary because the ALJ is required to evaluate every medical opinion received. *Id.* These factors include: (1) the length of the treatment relationship and frequency of examinations; (2) the nature and extent of treatment relationship; (3) the medical evidence in support of the opinion; (4) the consistency of the opinion with the record as a whole; (5) whether the opinion is from a specialist; and (6) any other factors that tend to support or contradict the opinion. 20 C.F.R. § 404.1527(c)(2)-(6).

Generally, the opinion of the treating physician will not be afforded controlling weight when the treating physician issued opinions that were not consistent with those of other medical experts and is contradicted by other substantial evidence in the record. *Halloran*, 362 F.3d at 32; 20 C.F.R. § 404.1527(c)(2); *Snell*, 177 F.3d at 133 ("When other substantial evidence in the record conflicts with the treating physician's opinion . . . that opinion will not be deemed controlling. And the less consistent that opinion is with the record as a whole, the less weight it

will be given."). Other findings, including the ultimate finding of whether the claimant is disabled, are reserved to the Commissioner. *Snell,* 177 F.3d at 133; 20 C.F.R. § 404.1527(d)(2).

The Regulations require the Commissioner's notice of determination or decision to "give good reasons" for the weight given a treating source's opinion. 20 C.F.R. § 404.1527(c)(2). This is necessary to assist the court's review of the Commissioner's decision and it "let[s] claimants understand the disposition of their cases." *Halloran*, 362 F.3d at 33 (citing *Snell*, 177 F.3d at 134). Failure to provide good reasons for not crediting the opinion of a claimant's treating physician is a ground for remand. *Snell*, 177 F.3d at 133; *Halloran*, 362 F.3d at 32-33. However, remand is unnecessary where application of the correct legal standard could lead to only one conclusion. *Schaal*, 134 F.3d at 504.

### 2.    Opinion of Barbara Mols-Kowalczewski, M.D.

Plaintiff argues the opinion of Dr. Mols-Kowalczewski, an endocrinologist who treated Plaintiff's diabetes, should have been given greater weight. (Dkt. No. 8 at 12-13.) For the reasons discussed below, the Court agrees with the Commissioner that the ALJ's assignment of "little weight" to Dr. Mols-Kowalczewski's opinion was proper because the opinion was not consistent with her treatment records, the medical evidence overall, and Plaintiff's reported activities. (Dkt. No. 11 at 8-9.)

Dr. Mols-Kowalczewski completed a medical source statement dated September 27, 2010. (T. at 474-79.) The physician stated she treated Plaintiff on only three dates -- December 2, 2009, March 9, 2010, and August 23, 2010 -- prior to completing the source statement. (T. at 474.) In her opinion, Dr. Mols-Kowalczewski noted positive clinical findings to support her diagnosis by indicating Plaintiff "is unable to sleep due to pain in both arms" and she had "diminished strength in both arms[,] unable to put hands above head." *Id.* However, in the

physical residual functional capacity part of the form, Dr. Mols-Kowalczewski did not answer

the questions and deferred to "orthopedic doctor[,] neurology and primary care doctors."  (T. at

477-78.)  She noted Plaintiff would have "good days" and "bad days" and that Plaintiff's "pain,

fatigue or other symptoms" would constantly "interfere with attention and concentration."  (T. at

478.)  Dr. Mols-Kowalczewski stated the basis for her conclusions was that "patient has shoulder

pain and h[istory] of stroke, [decreased] muscle strength[,] please see orthopedic reports."  *Id.*

She ultimately concluded in her opinion that the Plaintiff had Type I diabetes and "will need

frequent brakes [sic] to assure that she can check her blood sugars and act on them

appropriately."  (T. at 479.)  Again, Dr. Mols-Kowalczewski deferred to "orthopedic, primary

care physicians" when asked to opine when the symptoms and limitations began.  *Id.*

Though Plaintiff contends Dr. Mols-Kowalczewski's opinion should have been provided

more if not controlling weight, the Regulations provide the opinion of a treating source will be

given controlling weight only when it is well supported by medically acceptable clinical and

laboratory diagnostic techniques and is not inconsistent with the other substantial evidence of

record.  *See* 20 C.F.R. § 404.1527(c); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188,

at *1 (SSA July 2, 1996).

As the ALJ discussed, Dr. Mols-Kowalczewski's opinion was not consistent with other

substantial evidence of record, including her own treatment notes and Plaintiff's activities.  (T. at

564, 572.)  For instance, Dr. Mols-Kowalczewski noted Plaintiff had diminished sensation in her

lower extremities when checked with a tuning fork, and that the majority of Plaintiff's high

blood sugars were after supper.  (T. at 470.)  She noted there was no retinopathy.  *Id.*  Dr. Mols-

Kowalczewski did not note any arm numbness, difficulty walking, or diminished extremity

strength or other diminished strength in her treatment notes of Plaintiff either before or after she rendered the opinion.  (T. at 470, 527.)

Additionally, Plaintiff's primary care physician, Heather Finger, M.D., noted on May 6, 2009, that Plaintiff was watching her grandchildren and walking approximately three miles per day.  (T. at 482.)  On August 6, 2009, Dr. Finger performed a physical examination of Plaintiff for a BOCES program Plaintiff was beginning in order to obtain her Certified Nursing Assistant ("CNA") certificate.  (T. at 487-88.)  In that exam, Dr. Finger noted Plaintiff's diabetes was managed on an insulin pump; she had no dizzy spells or fainting, and no vision problems.  (T. at 487.)  Plaintiff's musculoskeletal system was without deformity and she had full range of motion.  (T. at 488.)  On November 11, 2009, although Plaintiff appeared fatigued, Dr. Finger did not note any problems with Plaintiff's ability to walk, or with her extremities.  (T. at 490.)  While on March 3, 2010, Dr. Finger noted Plaintiff had some bilateral shoulder discomfort with decreased range of motion and gave her a physical therapy prescription (T. at 491), Plaintiff apparently never pursued physical therapy treatment.

As for her activities of daily living during the relevant time period, Plaintiff testified she completed the CNA program in December of 2009.  (T. at 47.)  The course work required her to attend classes for six to ten weeks, five days a week, for three hours a night.  (T. at 47, 78.)  Plaintiff also noted she could walk a mile or so, and did not need assistive devices.  (T. at 53.)  She could drive, travel alone, grocery shop and carry groceries, and manage funds.  (T. at 52–54, 86-87, 328-39.)  Plaintiff also denied any significant side effects from her thyroid medication, except that she felt a little dizziness when getting up in the morning for a minute or two, but she did not experience dizziness during the day.  (T. at 51-52.)

Plaintiff's argument that the ALJ failed to appropriately consider the regulatory factors when assigning Dr. Mols-Kowalczewski's opinion little weight is without merit.  (*See* Dkt No. 8 at 11.)  Here, the ALJ considered the length, nature, and extent of the treating relationship, and the consistency of the opinion with other evidence of record.  (*See* T. at 572-573.)  Moreover, as noted above, Dr. Mols-Kowalczewski did not provide any opinion related to Plaintiff's ability to lift, carry, sit, stand, or walk.  (*See* T. at 477-78.)  Based upon the above, the Court finds that the ALJ gave good reasons for affording "little weight" to Dr. Mols-Kowalczewski's opinion.

3.    Opinion of Laura Martin, D.O.

Plaintiff argues Dr. Martin's medical source statements were likewise improperly discounted.  (Dkt. No. 8 at 12-15.)  The Court agrees with the Commissioner that the ALJ appropriately afforded "no weight" to Dr. Martin's opinion.  (Dkt. No. 11 at 9-11.)

In the medical source statement dated February 16, 2011, Dr. Martin stated she treated Plaintiff every three months.  (T. at 377.)  However, at the time she provided the statement, Dr. Martin had treated Plaintiff only once before, on November 16, 2010, and then once on the date of the statement, February 16, 2011.  (T. at 377, 510, 511.)  Dr. Martin diagnosed Plaintiff with diabetes, painful feet, frozen shoulder, and diabetic neuropathy.  (T. at 377.)  She noted symptoms of "pain with walking, feet painful, [decreased] sensation fingers, toes[,] mood swings, stumbles often when standing up[,] decreased range of motion right shoulder, pain right arm."  (T. at 378.)

Dr. Martin opined Plaintiff was limited to sitting for four hours, standing/walking for zero to one hour, and recommended Plaintiff not sit, stand or walk continuously and she should get up and move around every twenty minutes and could sit again after five minutes.  (T. at 379-80.)  She opined Plaintiff could occasionally lift zero to ten pounds and occasionally carry zero

14

to five pounds. (T. at 380.) Plaintiff had moderate limitations in grasping, turning, twisting objects; minimal limitations in using fingers and hands for fine manipulations; and marked limitations in using arms for reaching including overhead. (T. at 380-81.) Dr. Martin noted Plaintiff took several medications, but did not note any side effects of the medications. (T. at 381.) Dr. Martin also opined Plaintiff would need unscheduled breaks on an hourly basis of a fifteen-minute duration. (T. at 382.)

In July 2011, Dr. Martin opined that Plaintiff had to alter her position regularly and that she could sit for four hours in an eight-hour day. (T. at 507.) On October 29, 2012, Dr. Martin noted similar exertional and non-exertional limitations, with an inability for Plaintiff to stand or walk for more than two hours in an eight-hour day, and Plaintiff could sit for eight hours a day. (T. at 535.) Plaintiff would need to get up and move around every hour, and she had various postural and manipulative limitations mainly on the right. (T. at 536-37.)

Here, the Court finds that the ALJ provided good reasons for assigning "no weight" to Dr. Martin's earlier opinion. (T. at 573.) The ALJ appropriately discussed the inconsistencies between Dr. Martin's opinion and her own treatment notes. (T. at 573-74.) For instance, Dr. Martin did not document any musculoskeletal exam on November 16, 2010, February 16, 2011, or July 13, 2011. (T. at 508-12.) Moreover, there was a lack of objective or laboratory findings to support Dr. Martin's limitations with lifting, carrying, sitting and standing. *Id.* Dr. Martin does not indicate any dizziness, or other notations in her limited exam and treatment notes. *Id.* Then, in her opinion of October 29, 2012, Dr. Martin notes that Plaintiff's right "frozen shoulder" is "yet to be evaluated." (T. at 533.)

Plaintiff contends the ALJ erred in giving no weight to Dr. Martin's opinion of February 16, 2011, because Dr. Martin stated that her opinion was "also based on appropriate clinical and

diagnostic findings of: elevated sugar readings, numbness of the feet, an antalgic gait, decreased

range of motion in the shoulder, and findings on EMG testing . . . ."  (Dkt. No. 8 at 13.)

However, as noted, Dr. Martin only treated Plaintiff on two occasions, November 16, 2010, and

February 16, 2011 (the date of the opinion), before providing the source statement.  (T. at 377,

510-11.)  The ALJ properly noted the examinations of Plaintiff by Dr. Martin during that time

period did not support the opinion.  (T. at 509, 510, 512, 573-74, 781-83.)  Likewise, as set forth

above, the examinations of Dr. Finger during the relevant time period do not support the opinion

of Dr. Martin.  (T. at 430-31, 482-83, 485-88.)

The ALJ considered Plaintiff's activities of daily living which are also inconsistent with

the opinion of Dr. Martin.  During the time period at issue, Plaintiff completed a CNA program,

did house work, shopped, walked three miles per day for exercise, continued driving herself, read

books and watched television.  (T. at 52, 57, 75-76, 81, 326, 328-29, 478, 538.)  An ALJ may set

aside an opinion of a treating physician that is contradicted by the weight of other record

evidence.  *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999); 20 C.F.R. § 404.1527(c)(2).

Accordingly, the Court finds that the ALJ gave good reasons for assigning Dr. Martin's

opinion "no weight" for the time period at issue.

### 4.    The Appeals Council's Directive and the Onset Date of Disability

Plaintiff also argues the ALJ failed to follow the Appeals Council's directive to further

explain the weight given to the opinion evidence of Dr. Martin upon which the ALJ relied to

determine that Plaintiff was disabled after July 13, 2011, but that same evidence was given little

to no weight prior to that date.  (Dkt. Nos. 8 at 13-14; 14 at 2-3.)  Contrary to Plaintiff's

contention that the "ALJ simply issued the exact same decision," the ALJ specifically addressed

this directive, providing an exhaustive explanation as to why "it is not inconsistent to accord

16

little or no weight to the treating source opinions for the period from November 1, 2008 through July 12, 2011 based on various considerations . . . ." (T. at 576.) The ALJ went on to explain Plaintiff had visited both doctors less often during the earlier period at issue, and there were fewer supportive physical examination findings, more limited treatment, and less limiting activities of daily living. *Id.* Contrary to Plaintiff's contention that the July 13, 2011, onset date was arbitrary (Dkt. No. 8 at 13), the ALJ determined in her previous decision that Dr. Martin's undated opinion (T. at 507) was supported by "Dr. Martin's most recent progress note, dated July 13, 2011, [which] shows that the [Plaintiff] required inpatient hospitalization for three days for uncontrolled blood sugars." (T. at 31, 508.)

The Appeals Council also ordered the ALJ to re-evaluate Plaintiff's established onset date of disability in accordance with Social Security Ruling 83-20. (T. at 649.) Plaintiff claims the ALJ violated this order by ignoring evidence of her blood sugar spikes in February 2009. (Dkt. No. 8 at 15; *see also* T. at 430.) The ALJ explicitly discussed this evidence; moreover, it provides no basis for assigning an earlier onset date because her high blood sugar corrected within 24-hours of changing her insulin pump injection site. (T. at 430, 571.) Plaintiff also contends that "subsequent treatment notes show that her diabetes was never under good control after this date." (Dkt. No. 8 at 15.) However, the record does not support this assertion. (*See, e.g.,* T. at 482, 487.) Accordingly, the Court finds the ALJ properly established the onset date of disability, and correctly followed the directives of the Appeals Council.

5.    The RFC is Supported by Substantial Evidence

Plaintiff also contends the ALJ failed to point to specific evidence to support the RFC. (Dkt. Nos. 8 at 17-18; 14 at 3-4.) The Court disagrees. The ALJ thoroughly described the treating source and other evidence of record which supported the RFC. (T. at 570-72.) The ALJ

17

explicitly stated the RFC finding was based on this objective evidence and went on to describe

the evidence supporting the RFC, and lack of evidence to support disability.  *Id.*  Clearly Plaintiff

bears the burden of proving disability.  *Kohler*, 546 F.3d at 265 (citing *Perez*, 77 F.3d at 46).

The record need not contain an opinion perfectly matching the RFC in order for an ALJ to reject

a treating physician's opinion.  *See Monroe v. Comm'r of Soc. Sec*. 676 F. App'x 5, 8 (2d Cir.

2017). *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).  The Second Circuit recognizes that

"[a] lack of supporting evidence on a matter for which the claimant bears the burden of proof,

particularly when coupled with other inconsistent record evidence, can constitute substantial

evidence supporting a denial of benefits." *Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015);

*see also Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983) ("The [Commissioner] is

entitled to rely not only on what the record says, but also on what it does not say.").

Consequently, the ALJ's RFC finding is supported by substantial evidence.

     **B**.    **Credibility Evidence and the RFC Determination**

     In addition to reviewing the medical evidence in determining the RFC, the ALJ must

review the credibility of the claimant.  The Court reviews an ALJ's findings of fact under a

substantial evidence standard.  "It is the function of the Commissioner, not the reviewing courts,

to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the

claimant." *Aponte v. Sec'y, Dept. of Health & Human Servs.*, 728 F.2d 588, 591 (2d Cir. 1984)

(citation and internal punctuation omitted).  To satisfy the substantial evidence rule, the ALJ's

credibility assessment must be based on a two-step analysis of pertinent evidence in the record.

20 C.F.R. § 404.1529; *Genier*, 606 F.3d at 49; SSR 96-7p, 1996 WL 374186, at *5 (SSA July 2,

1996).  The ALJ is required to consider all of the evidence of record in making his credibility

assessment.  *Genier*, 606 F.3d at 50; 20 C.F.R. § 404.1529(c).

First, the ALJ must consider "whether there is an underlying medically determinable physical or mental impairment(s) . . . that could reasonably be expected to produce the claimant's pain or other symptoms."  SSR 96-7p, 1996 WL 374186, at *2.  This finding does not involve a determination as to the intensity, persistence, or functionally limiting effects of the claimant's pain or other symptoms.  *Id.*  If no impairment is found that could reasonably be expected to produce pain, the claimant's pain cannot be found to affect the claimant's ability to do basic work activities.  *Id.*  An individual's statements about her pain are not enough by themselves to establish the existence of a physical or mental impairment, or to establish the individual is disabled.  *See Grewen v. Colvin*, No. 1:11-CV-829, 2014 WL 1289575, at *4 (N.D.N.Y. Mar. 27, 2014) (while a "claimant's subjective complaints are an important part of the RFC calculus . . . subjective symptomatology by itself cannot be the basis for a finding of disability . . . [and] [a] claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptoms alleged."); *see also* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1529; SSR 96-7p.

Once an underlying physical or mental impairment that could reasonably be expected to produce the claimant's pain or other symptoms has been established, the second step of the analysis is for the ALJ to "consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with other objective medical evidence and other evidence."  *Genier*, 606 F.3d at 49 (quoting 20 C.F.R. § 404.1529(a)); *see also Poupore*, 566 F.3d at 307 (finding claimant's subjective complaints of pain were insufficient to establish disability because they were unsupported by objective medical evidence tending to support a conclusion that he has a medically determinable impairment that could reasonably be expected to produce the alleged symptoms); *see also* SSR 96-7p, 1996 WL 374186, at *5 ("One strong indication of the

19

credibility of [an individual's statements is their] consistency, both internally and with other information in the case record."). This includes evaluation of the intensity, persistence, and limiting effects of the pain or symptoms to determine the extent to which they limit the claimant's ability to perform basic work activities. *Genier*, 606 F.3d at 49.

The ALJ must consider all evidence of record, including statements the claimant or others make about her impairments, her restrictions, daily activities, efforts to work, or any other relevant statements the claimant makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony during administrative proceedings. *Id.* (citation omitted).

A claimant's "symptoms can sometimes suggest a greater level of severity than can be shown by the objective medical evidence alone." SSR 96-7p, 1996 WL 374186, at *3. When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve pain or symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to pain symptoms. 20 C.F.R. § 404.1529(c)(3)(i)-(vii).

The ALJ found that Plaintiff's medically determined impairments could reasonably be expected to cause the symptoms alleged by Plaintiff. (T. at 568.) However, the ALJ the found

Plaintiff's statements concerning the intensity, persistence, and limiting effects of these
symptoms were not entirely credible.  (T. at 568-70.)

Plaintiff argues the ALJ erred in the assessment of her credibility.  (Dkt. No. 8 at 18-21.)
Specifically, Plaintiff claims the ALJ improperly accounted for Plaintiff's activities of daily
living and improperly discounted Plaintiff's lack of treatment regarding her shoulder complaints.
*Id*.  Plaintiff further argues the ALJ erred by "relying heavily" on information that Plaintiff
stopped working because her employer relocated, and not due to her medical impairments.  *Id*. at
21.  The Commissioner asserts the ALJ's credibility finding was proper and supported by
substantial evidence.  (Dkt. No. 11 at 13-17.)

"An [ALJ] may properly reject [subjective complaints] after weighing the objective
medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but
must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the
determination is supported by substantial evidence.'"  *Lewis*, 62 F. Supp. 2d at 651 (quoting
*Gallardo v. Apfel*, Civ. No. 96-9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 2, 1999));
*Ferraris*, 728 F.2d at 587.  "A finding that a [claimant] is not credible must . . . be set forth with
sufficient specificity to permit intelligible plenary review of the record."  *Williams*, 859 F.2d at
260-61 (citation omitted) (finding that failure to make credibility findings regarding claimant's
critical testimony undermines the Secretary's argument that there is substantial evidence
adequate to support his conclusion that claimant is not disabled).  "Further, whatever findings the
ALJ makes must be consistent with the medical and other evidence."  *Id*. at 261 (citation
omitted) ("[A]n ALJ must assess subjective evidence in light of objective medical facts and
diagnoses.").

"Even where the administrative record may also adequately support contrary findings on particular issues, the ALJ's factual findings 'must be given conclusive effect' so long as they are supported by substantial evidence." *Genier*, 606 F.3d at 49 (citing *Schauer v. Schweiker*, 675 F.2d 55, 57 (2d Cir. 1982)).  The ALJ's evaluation of a plaintiff's credibility is entitled to great deference if it is supported by substantial evidence.  *Murphy v. Barnhart*, Civ. No. 00-9621, 2003 WL 470572, at *10 (S.D.N.Y. Jan. 21, 2003) (citing *Bischof v. Apfel*, 65 F. Supp. 2d 140, 147 (E.D.N.Y. 1999)); *Bomeisl v. Apfel*, Civ. No. 96-9718, 1998 WL 430547, at *6 (S.D.N.Y. July 30, 1998) ("Furthermore, the ALJ has discretion to evaluate a claimant's credibility . . . and such findings are entitled to deference because the ALJ had the opportunity to observe the claimant's testimony and demeanor at the hearing.").

In this case, the ALJ applied the appropriate standards in assessing the credibility of Plaintiff's statements regarding the severity of her symptoms and limitations.  (T. at 568-70.)  In making the credibility assessment, the ALJ considered a number of factors, including Plaintiff's limited use of medication, limited course of treatment for her right shoulder complaints, and the discrepancies in Plaintiff's various statements and in her testimony with regard to the nature and scope of her blood sugar control and her daily activities.  20 C.F.R. § 404.1529; SSR 96-4p; SSR 96-7p.

Despite Plaintiff's argument to the contrary, the ALJ did not improperly consider Plaintiff's daily activities.  (Dkt. No. 8 at 20; T at 570.)  The record shows Plaintiff's extensive daily activities during the relevant time frame involve walking three miles per day, driving and going out alone, caring for her grandchildren, completing a six to ten-week CNA course which required her to attend three-hour classes five days per week, grocery shopping, reading and watching television, doing some household chores including cooking and vacuuming, and doing

laundry with some assistance. (T. at 47, 48, 52, 54, 56, 78, 326-328.) In September of 2010,

Plaintiff testified she has no problems sitting, she could walk a mile or so, and she did not need

any assistive devices to stand or walk. (T. at 53.) While Plaintiff contends her ability to perform

these activities are not indicative that she could perform full time work (Dkt. No. 8 at 16, 20), the

ALJ properly considered the extent of Plaintiff's activities of daily living and found they

contradicted claims of total disability. (T. at 570.) Moreover, Plaintiff testified she stopped

working in November of 2008 because her company relocated out of state. (T. at 54, 76.) She

collected unemployment benefits certifying that she was ready and willing to work because she

needed the money although she claims she was not ready, willing, and able to work. (T. at 77-

78.) While she reported she needed some assistance from her co-workers or supervisor two to

three times a day to lift trays or boxes of needles, the ALJ found her described work activities as

a heat treat operator "required greater exertional demands than is required by the established

[RFC]." (T. at 570; *see also* T. at 48-49, 54- 55, 76-78.)

Furthermore, the determination that Plaintiff could perform light work with restrictions is

consistent with the clinical findings in the medical records. Under certain circumstances a

subjective experience of pain may support a finding of disability. *Snell,* 177 F.3d at 135 (citing

*Gallagher v. Schweiker*, 679 F.2d 82 (2d Cir. 1983)). This is not such a case. A claimant who

alleges disability based on pain does not have to provide direct medical evidence confirming the

extent of the pain; however, there must be medical signs and laboratory findings showing the

claimant has a medical impairment which could reasonably be expected to produce the pain. *Id*.;

20 C.F.R. § 404.1529.

Here, the lack of treatment for shoulder pain and lack of medical signs and laboratory

findings regarding her shoulder pain support the ALJ's determination of Plaintiff's credibility in

that regard.  Indeed, the ALJ noted Plaintiff's lack of prescription medication to treat her

shoulder pain, her lack of ongoing treatment for her shoulder, and her failure to follow through

with her treating physician's recommendations, including a referral to physical therapy.  (T. at

429-31, 491, 568-69.)  As for her claimed uncontrolled blood sugars, the record shows Plaintiff

did not properly monitor her blood sugars, and shows she had better control when she was

careful with her insulin dosing, changed her injection site, and followed a low glycemic index

diet.  (T. at 428, 439, 468, 482, 491.)  As discussed by the ALJ, the record also does not support

Plaintiff's allegations of medication side effects and fatigue.  (T. at 569-70.)  Her treating

providers did not consistently document fatigue, and she denied adverse medication side effects

other than being dizzy for one to two minutes in the morning from her thyroid medication.  (T. at

51-52, 294, 309, 468, 470-71, 482-83, 490-91.)

The ALJ correctly found Plaintiff's allegations of disabling symptomatology were not

credible to the degree alleged.  (T. at 568.)  The ALJ determines issues of credibility, and

deference should be given to her judgment because she heard Plaintiff's testimony and observed

Plaintiff's demeanor.  *See Garrison v. Comm'r of Social Sec.*, No. 08-CV-1005, 2010 WL

2776978, at *5-7 (N.D.N.Y. July 14, 2010).  Based upon the above, the ALJ did not err in her

assessment of Plaintiff's credibility.  Accordingly, the Court finds that Plaintiff's RFC is based

upon proper legal standards and is supported by substantial evidence.

### C.    Step Five Determination

Plaintiff lastly argues that the ALJ erred in relying on "flawed" vocational expert

testimony.  (Dkt. No. 8 at 21-24.)  Initially, Plaintiff challenges the Step Five determination

because she claims the vocational expert was asked incomplete hypothetical questions

unsupported by substantial evidence in the record.  (Dkt. No. 8 at 22.)

Generally, the Commissioner meets her burden at the fifth step by resorting to the applicable Medical-Vocational Guidelines ("grids").  *Rosa v. Callahan*, 168 F.3d 72, 78 (2d Cir. 1999) (citing 20 C.F.R. Pt. 404, Subpt. P, App. 2 (1986)).  The grids take into account the claimant's RFC in conjunction with the claimant's age, education, and work experience.  *Id.* "Based on these considerations the grids indicate whether the claimant can engage in any substantial gainful work existing in the national economy."  *Id.*

"[E]xclusive reliance on the grids is inappropriate where the guidelines fail to describe the full extent of a claimant's physical limitations."  *Rosa*, 168 F.3d at 78 (finding the ALJ erred in applying the grids to deny benefits in a case where it was undisputed that the claimant suffered from nonexertional impairments).  "The Grids are inapplicable in cases where the claimant exhibits a significant nonexertional impairment."  *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013).  This is where the nonexertional impairment has more than a negligible impact on a claimant's ability to perform the full range of work.  *Id.* (citing *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010)).  An impairment is non-negligible when it so narrows a claimant's possible range of work as to deprive her of a meaningful employment opportunity.  *Id.* (finding that the ALJ erred by not determining whether claimant's reaching limitation was negligible or precluded reliance on the grids).

If a claimant has nonexertional limitations that significantly limit the range of work permitted by her exertional limitations, the ALJ is required to consult with a vocational expert. *Zabala*, 595 F.3d at 410 (citing *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 986) (citations omitted)).  A nonexertional limitation is one imposed by the claimant's impairments that affect her ability to meet the requirements of jobs other than strength demands, and includes manipulative impairments such as pain.  *Rosa*, 168 F.3d at 78 n.2 (citing *Soblewski v. Apfel*, 985

F. Supp. 300, 310 (E.D.N.Y. 1997); 20 C.F.R. § 404.1569a(c)).  The existence of nonexertional

limitations does not automatically preclude reliance on the grids, or require that the ALJ consult

a vocational expert.  *Id*.  Where the claimant's nonexertional limitations did not result in an

additional loss of work capacity, an ALJ's use of the grids is permissible.  *Zabala*, 595 F.3d at

411.  However, when a vocational expert testifies, the expert may testify as to the existence of

jobs in the national economy, and as to the claimant's ability to perform any of those jobs, given

her functional limitations.  *See Colon v. Comm'r of Soc. Sec.*, No. 6:00-CV-0556 (GLS), 2004

WL 1144059, at *6 (N.D.N.Y. Mar. 22, 2004).

     Here, the ALJ properly obtained the testimony of a vocational expert to determine

whether jobs existed in the national economy for an individual with the Plaintiff's age,

education, work experience, and established RFC.  (T. at 59-61, 576-581.)  The vocational expert

clearly opined there were at least three jobs in the national economy Plaintiff could perform

considering her limitations set forth in the RFC.  (T. at 64-66.)  In her hypothetical questions to

the expert (T. at 62-66), the ALJ correctly included the limitations in the RFC as found by the

ALJ to be based upon substantial evidence.  *See Dumas v. Schweiker*, 712 F.2d 1545, 1554 (2d

Cir. 1983) (ALJ properly relied on vocational expert's testimony since the hypothetical was

based upon the ALJ's RFC assessment, which was supported by substantial evidence).  Because,

as determined above, the ALJ's RFC finding was based upon correct legal principals and

substantial evidence, and the ALJ relied upon the testimony of a vocational expert who was

asked hypothetical questions that incorporated Plaintiff's established RFC, the Court finds no

merit in Plaintiff's claims that the vocational expert was asked incomplete hypothetical questions

that were without the support of substantial evidence in the record.

Next, Plaintiff argues that the vocational expert gave contradictory and unreliable testimony regarding Plaintiff's ability to stand and/or walk. (Dkt. No. 8 at 22.) Again, the Court disagrees. The ALJ initially asked the vocational expert what type of jobs existed for a hypothetical claimant who, among other things, could "stand/walk six hours within an eight-hour workday, but no more than 20-25 minutes at one time before alternating to sitting for 15 minutes. Can sit for six hours within an eight-hour workday." (T. at 62.) The expert responded by identifying the jobs that such a hypothetical claimant could perform, and the ALJ properly relied on this testimony in finding Plaintiff not disabled at Step Five of the sequential evaluation because, as noted above, the hypothetical appropriately included the limitations as determined by the ALJ in the RFC. (T. at 64, 578.) Plaintiff's representative then asked the vocational expert whether Plaintiff could work if she needed "[10]-15 minutes, unscheduled breaks, let's say, every half hour for about 10-15 minutes where she could sit down and take the pressure off her feet because of the neuropathy in her feet?" (T. at 69.) The expert responded that "if I understand the hypothetical, every 20 minutes she would have to take a break and basically get off her feet for 10-15 minutes including elevation, if I'm understanding that correctly, that would preclude all positions at all skill levels." (T. at 69.)

Preliminarily, the Court notes the Plaintiff's representative's hypothetical questions were not based upon the RFC as determined by the ALJ. More importantly, the hypothetical questions posed to the vocational expert by the ALJ and by the Plaintiff's representative were not "nearly identical" as Plaintiff asserts. (Dkt. No. 8 at 22.) The ALJ's initial questioning did not mention anything about "unscheduled breaks" or Plaintiff elevating her feet. (T. at 62.) Rather, the ALJ's hypothetical question described a type of sit/stand option throughout the work day. (T. at 62.) The question from Plaintiff's representative, however, specifically asked about

unscheduled, off task breaks.  Therefore, the expert's responses were not contradictory and

Plaintiff's argument in this regard has no merit.

    The Plaintiff also argues the vocational expert's testimony about whether Plaintiff had

transferrable skills was "questionable" because the expert represented Plaintiff's past relevant

work as an "abrasive grinder" given the DOT[5] code used by the expert.  (Dkt. No. 8 at 22-23; T.

at 60.)  While the expert appears to have provided the incorrect DOT code when describing

Plaintiff's past work, the ALJ found at Step Four that Plaintiff could not perform her past

relevant work.  (T. at 577.)  A plain reading of the vocational expert's testimony shows his

opinion that Plaintiff acquired transferable skills was clearly based on Plaintiff's own description

of her past work, not the DOT code applicable to her past job.  (T. at 59-61.)

    When Plaintiff applied for benefits, she stated that she worked as a "heat treat operator"

from 1978 to 2008.  (T. at 305.)  She noted the job required her to heat treat surgical needles and

it involved using machines, tools or equipment and technical knowledge or skills.  (T. at 306.)

At the September 2010 hearing when the vocational expert was present, Plaintiff testified that

she "checked surgical needles and laid them out on a tray and then put them through an oven."

(T. at 48.)  She also "had to push buttons to control the temperature of the needles that went

through."  (T. at 66.)  The vocational expert testified Plaintiff's past job most closely resembled

the DOT position of "heat treatment operator."  (T. at 60; *see* SSR 82-41.)  Plaintiff's testimony

was a more accurate portrayal of her past work than the DOT's "generic occupational

descriptions."  *Lewis v. Comm'r of Soc. Sec.*, No. 6:00-1225, 2005 WL 1899399, at *4 n. 11

(N.D.N.Y. Aug. 2, 2005); SSR 82-41 ("The claimant is in the best position to describe just what

he or she did in [her past relevant work], how it was done, what exertion was involved, what

---

[5] DICTIONARY OF OCCUPATONAL TITLES (U.S. Dep't of Labor, 4th Ed., rev. 1991).

skilled or semiskilled work [activities] were involved, etc. . . .  An occupational title by itself . . . is [not] sufficient.").

Moreover, "when the issue of skills and their transferability must be decided, the . . . ALJ is required to make certain findings of fact and include them in the written decision.  Findings should be supported with appropriate documentation."  S.S.R. 82-41.  In particular, "[w]hen a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the . . . ALJ's decision."  *Id.*  Thus, Social Security Ruling 82-41 requires specific findings by the ALJ on the transferability of vocational skills, though an ALJ may rely on a vocational expert's testimony in doing so.  *See Draegert v. Barnhart*, 311 F.3d 468, 475-77 (2d Cir. 2002).

Plaintiff contends, among other things, that the ALJ erred by determining she was not disabled under the grids due to her age.  (Dkt. No. 8 at 23-24.)  Plaintiff also argues the ALJ's determination that Plaintiff had acquired transferable vocational skills was not based on substantial evidence because the expert used the incorrect DOT code for a job she never performed.  *Id.*  For the following reasons, the Court finds Plaintiff's argument unpersuasive.

Under the grids, a claimant who is closely approaching advanced age, who has a limited education or less, who previously held a skilled or semi-skilled job that she can no longer perform, and who has the RFC to perform at least sedentary work, is not to be found disabled if she has vocational skills that are transferable, but must be found disabled if she does not have such skills.  *See* 20 C.F.R. Pt. 404, Subpt. P, App. 2, Rules 201.10, 201.11; *cf. Draegert*, 311 F.3d at 473 (describing a similar grids-based analysis for a claimant with different

characteristics).  Therefore, whether Plaintiff acquired job skills from her previous work, and

whether those skills were transferable, were "crucial factors" to the ALJ's determination at step

five of the analysis.  *See Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

The ALJ adduced testimony from the vocational expert to assist in the determination as to

whether Plaintiff was not disabled under the grids.  During his testimony, the vocational expert

identified Plaintiff's relevant past work --- heat treatment operator --- and identified it as having

an exertional level of light and as semi-skilled work.  (T. at 60.)  When the ALJ asked if there

were any transferable skills at the light level that the hypothetical individual with Plaintiff's RFC

could perform, the vocational expert provided several job titles after previously identifying

Plaintiff's acquired vocational skills and indicated why they were transferable to those identified

jobs.  (T. at 62-64.)  The vocational expert also identified that those jobs existed in significant

numbers in the national economy for a person with Plaintiff's age, education, past work

experience, and RFC.  (T. at 64-66.)

In her written decision, the ALJ made the following relevant factual findings: (1) during

the pendency of the proceedings, Plaintiff turned 55 years old, and became "an individual of

advanced age," 20 C.F.R. § 404.1563; (2) Plaintiff obtained her GED, 20 C.F.R. § 404.1564; (3)

Plaintiff was unable to perform her past relevant work, *see* 20 C.F.R. § 404.1565; (4) Plaintiff

had a residual functional capacity to perform light work, with some exertional limitations, *see* 20

C.F.R. § 404.1567; and, relying in part on the testimony of the vocational expert, (5) Plaintiff

had acquired vocational skills from her past work that were transferable to other jobs

existing in significant numbers in the national economy that Plaintiff can perform, *see* 20 C.F.R.

§§ 404.1568, 404.1569, 404.1569a.  (T. at 567, 576-581.)  The ALJ's decision identified the

skills Plaintiff acquired and how they transferred to the jobs identified by the vocational expert.

(T. at 577-579.)  "[T]he crucial factors in any determination must be set forth with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." *Ferraris*, 728 F.2d at 587.  The ALJ's decision identifies the skills Plaintiff acquired and how those skills transfer to the jobs identified by the vocational expert.  In so doing, the ALJ complied with Social Security Ruling 82-41.  Where, as here, the ALJ set forth with sufficient specificity the claimant's acquired vocational skills and made sufficiently specific findings about their transferability, remand to the Commissioner is not warranted. *Cf. Draegert*, 311 F.3d at 472-77; *Ferraris*, 728 F.2d at 587-88; *see also Berry v. Schweiker*, 675 F.2d 464, 469 (2d Cir. 1982) (stating that "we would not hesitate to remand the case for further findings or a clearer explanation for the decision" where we are "unable to fathom the ALJ's rationale in relation to the evidence in the record").

In light of the foregoing, the Court finds that the ALJ's decision was based upon correct legal standards, and substantial evidence supports her determination that Plaintiff was not under a disability within the meaning of the SSA.  20 C.F.R. §404.1520(g).

**WHEREFORE,** it is hereby

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED** and Defendant's motion for judgment on the pleadings be **GRANTED** and the Complaint (Dkt. No. 1) be **DISMISSED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**. *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993) (citing

*Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1);

Fed. R. Civ. P. 72.

Dated: February 4, 2019
        Syracuse, New York

Therèse Wiley Dancks
United States Magistrate Judge