UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

DEBRA M.,

          **Plaintiff,**

 vs.                  5:17-cv-1359
                        (MAD/TWD)
**NANCY A. BERRYHILL,** *Commissioner of*
*Social Security,*

         **Defendant.**
_____

APPEARANCES:              OF COUNSEL:

**BINDER & BINDER**           **CHARLES E. BINDER, ESQ.**
485 Madison Avenue, Suite 501
New York, New York 10022
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**   **PADMA GHATAGE, ESQ.**
**OFFICE OF REGIONAL GENERAL COUNSEL**
Region II
26 Federal Plaza – Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

   Plaintiff commenced this action on December 14, 2017, seeking review of the decision of the Commissioner of Social Security (the "Commissioner") denying her application for Social Security Disability Benefits ("DIB"). *See* Dkt. No. 1. In a Report and Recommendation dated February 4, 2019, Magistrate Judge Dancks recommended that the Court grant the Commissioner's motion for judgment on the pleadings and dismiss this action. *See* Dkt. No. 17. On February 19, 2019, Plaintiff objected to the Report and Recommendation on three grounds:

(1) the Administrative Law Judge ("ALJ") failed to properly weigh the medical opinion evidence and improperly determined Plaintiff's residual functional capacity; (2) the ALJ failed to appropriately evaluate Plaintiff's credibility; and (3) the ALJ relied on flawed vocational expert testimony. *See* Dkt. No. 18 at 2.

Currently before the Court are Magistrate Judge Dancks' Report and Recommendation and Plaintiff's objections thereto.

## II. BACKGROUND

Plaintiff Debra Main was born on January 20, 1954, and lives with her husband. *See* Administrative Transcript ("Tr.") at 46. She received her GED, and also obtained a nursing aide's certification in 2009. *See id.* at 47. Plaintiff reported past work as a heat treat operator in a surgical needle factory, which she performed for thirty (30) years. *See id.* at 48, 60, 305-06. Plaintiff stopped working because "they closed the shop" and has not worked since November 2008. *Id.* at 48, 54. She alleges disability due to diabetes, hypertension, and hyperlipidemia. *See id.* at 304.

Plaintiff filed an application for social security disability benefits in April 2009, alleging disability as of November 1, 2008. *Id.* at 251-52. The application was denied and Plaintiff then made a timely request for a hearing in front of an ALJ, which was held before ALJ Jeffrey Jordan on September 29, 2010. *Id.* at 42-71. ALJ Jordan issued an unfavorable decision on October 19, 2010, finding that Plaintiff's conditions do not qualify her as "disabled" within the meaning of the Social Security Act (the "Act"). *Id.* at 90-100. ALJ Jordan's decision was remanded for a new hearing by the Appeals Council and in that a second hearing held on November 9, 2011 by ALJ Elizabeth W. Koennecke, ALJ Koennecke found that Plaintiff was disabled since July 13, 2011, but not for the period from November 1, 2008 to July 12, 2011. *Id.* at 90-100, 13-36. After the

Appeals Council denied review, Plaintiff commenced an action in this Court, which was remanded on the consent of the parties pursuant to sentence 4 of 42 U.S.C. § 405(g). *Id.* at 641-42.

Upon remand, on July 17, 2015, the Appeals Council ordered the ALJ to reconsider Plaintiff's disability for the period November 1, 2008 to July 12, 2011, and in a decision dated October 15, 2015 ALJ Koennecke again found Plaintiff was not disabled during that period. *Id.* at 646-50, 553-87. The Appeals Council denied review and Plaintiff commenced this action. *Id.* at 546-52, 541-42; Dkt. No. 1.

After carefully reviewing Plaintiff's Objections, the Court finds that Magistrate Judge Dancks did not err in upholding the Commissioner's final decision based on the ALJ findings. For the reasons stated below, the Court adopts Magistrate Judge Dancks's Report and Recommendation in its entirety.

### III. DISCUSSION[1]

**A.  Standard of Review**

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Court must examine the Administrative Transcript to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as

---

[1] For a complete statement of the underlying facts in this case, the Court refers the parties to Magistrate Judge Dancks' Report and Recommendation. Dkt. No. 17.

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citations and quotations omitted).

If supported by substantial evidence, the Commissioner's factual determinations are conclusive, and it is not permitted for the courts to substitute their analysis of the evidence. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982) (stating that the court "would be derelict in our duties if we simply paid lip service to this rule, while shaping [the Court's] holding to conform to our own interpretation of the evidence"). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (citation omitted).

When a party files specific objections to a magistrate judge's report and recommendation, the district court makes a "de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). However, when a party files "[g]eneral or conclusory objections or objections which merely recite the same arguments [that he presented] to the magistrate judge," the court reviews those recommendations for clear error. *O'Diah v. Mawhir*, No. 9:08-CV-322, 2011 WL 933846, *1 (N.D.N.Y. Mar. 16, 2011) (citations and footnote omitted). After the appropriate review, "the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

**B.     Analysis**

   ***1. The ALJ's Decision***

For purposes of Social Security Disability Insurance Benefits, a person is disabled when she is unable "to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). There is a five-step analysis for evaluating disability claims:

> "In essence, if the Commissioner determines (1) that the claimant is not working, (2) that he has a 'severe impairment,' (3) that the impairment is not one [listed in Appendix 1 of the regulations] that conclusively requires a determination of disability, and (4) that the claimant is not capable of continuing in his prior type of work, the Commissioner must find him disabled if (5) there is not another type of work the claimant can do." The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.

*Green-Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003) (quoting *Draegert v. Barnhart*, 311 F.3d 468, 472 (2d Cir. 2002)).

Plaintiff stopped working in November 2008. *See* Dkt. No. 17 at 2. The ALJ found that Plaintiff has severe impairments, specifically: diabetes mellitus and right shoulder disorder, but that Plaintiff's impairment or combination of impairments did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* Dkt. No. 17 at 6. The ALJ also determined that "Plaintiff [had] the residual functional capacity ("RFC") to perform light duty work for the period from November 1, 2008, to July 12, 2011," with some additional limitations. *See id.* at 6-7. In making this determination, the ALJ afforded little and no weight to the opinions of treating physicians Barbara Mols-Kowalczewski, M.D., and Laura Martin, D.O., respectively. *See id.* Given Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff has transferrable skills and that there were existing jobs in the national economy that Plaintiff could perform. *See id.* Ultimately, the ALJ concluded that

5

Plaintiff was not disabled from November 1, 2008, to July 12, 2011. *See id.* at 7.

### *2. Opinion Evidence and Residual Functional Capacity Determination*

In her objections, Plaintiff first argues that the ALJ failed to properly weigh the medical opinion evidence and failed to properly determine Plaintiff's RFC. *See* Dkt. No. 18 at 2-7. Specifically, Plaintiff contends that Magistrate Judge Dancks incorrectly found that the ALJ did not err by giving "no weight" to the opinions from treating board-certified physician Dr. Martin "because the doctor did not document musculoskeletal abnormalities on November 16, 2010, February 16, 2011, or July 13, 2011 and the opinions were found to lack support by sufficient 'objective' medical evidence." *Id.* at 2-3. Plaintiff contends, however, that Dr. Martin "specifically stated that the symptoms and limitations described for [Plaintiff] were based on clinical and objective testing (Tr. 378), including blood testing that documented elevated sugar readings, EMG testing, and clinical evidence of numbness of the feet, an antalgic gait, and decreased range of motion in the shoulder (Tr. 377-378)."

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). An RFC determination is informed by consideration of a claimant's physical and mental abilities, symptomology, including pain, and other limitations that could interfere with work activities on a regular and continuing basis. *See id.*; *see also Martone v. Apfel*, 70 F. Supp. 2d 145, 150 (N.D.N.Y. 1999).

When addressing a plaintiff's RFC, an ALJ is required to note how "the evidence supports each conclusion, citing specific medical facts (*e.g.*, laboratory findings) and non-medical evidence (*e.g.*, daily activities, observations)" to support each conclusion. Social Security Ruling

6

("S.S.R.") 96–8p, 1996 WL 374184, at *7; *see also Balsamo v. Chater*, 142 F.3d 75, 80-81 (2d Cir. 1998). Additionally,

> [t]he RFC assessment must first identify the individual's functional
> limitations or restrictions and assess his or her work-related abilities
> on a function-by-function basis, including the functions in
> paragraphs (b), (c), and (d) of 20 C.F.R. §§ 404.1545, 416.945.
> Only after that may RFC be expressed in terms of the exertional
> levels of work, sedentary, light, medium, heavy, and very heavy.

S.S.R. 96–8p, 1996 WL 374184, at *1; *see also Pronti v. Barnhart*, 339 F. Supp. 2d 480, 490 (W.D.N.Y. 2004). An ALJ's failure to explain the evidence he or she relied upon in assessing RFC constitutes a ground for a remand. *See Compo v. Commissioner of Social Sec.*, No. 6:05–CV–973, 2009 WL 2226496, *9 (N.D.N.Y. July 23, 2009) (citation omitted); *see also Hodge v. Astrue*, No. 07–CV–0162, 2009 WL 1940051, *10 (N.D.N.Y. July 7, 2009) (citation omitted).

To properly ascertain a claimant's RFC, an ALJ must therefore assess the claimant's exertional capabilities, addressing his or her ability to sit, stand, walk, lift, carry, push, and pull. *See* 20 C.F.R. §§ 404.1545(b), 404.1569a, 416.945(b), 416.969a. Nonexertional limitations or impairments, including impairments resulting in postural and manipulative limitations, must also be considered. *See* 20 C.F.R. §§ 404.1545(b), 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 § 200.00(e). When making an RFC determination, an ALJ must specify those functions the claimant is capable of performing; conclusory statements concerning his or her capabilities, however, will not suffice. *See Martone*, 70 F. Supp. 2d at 150 (citing *Ferraris*, 728 F.2d at 588). An administrative RFC finding can withstand judicial scrutiny only if there is substantial evidence in the record to support each requirement listed in the corresponding regulations. *See Martone*, 70 F. Supp. 2d at 150 (citing *LaPorta v. Bowen*, 737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F. Supp. 300, 309-10 (E.D.N.Y. 1997).

"While the ALJ is required to take into account a claimant's reports of pain, symptoms, and other indicia of impairment, she is not required to accept those reports 'without question.'" *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010); 20 C.F.R. § 416 .929(a). Instead, she "may exercise discretion in weighing the credibility of the claimant's testimony in light of the other evidence in the record." *Genier*, 606 F.3d at 49 (citing *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979)). The ALJ's credibility findings receive "special deference" because of her ability to observe the claimant's testimony. *See Yellow Freight Sys., Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994). Like other findings of the ALJ, the credibility finding is reviewed for whether it is supported by substantial evidence. *See Hopkins v. Colvin*, No. 13–cv–4803, 2014 WL 4392209, *5 (S.D.N.Y. Sept. 5, 2014); *Torres v. Colvin*, No. 12–cv–6527, 2014 WL 241061, *12 (S.D.N.Y. Jan. 22, 2014).

The treating physician rule states that "the opinion of a claimant's treating physician as to the nature and severity of the impairment is given 'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record.'" *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008). When an ALJ refuses to assign a treating physician's opinion controlling weight, a number of factors must be considered to determine the appropriate weight to assign, including: (i) the frequency of the examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(c). After accounting for these factors, "the ALJ must 'comprehensively set forth [her] reasons for the weight assigned to a treating physician's

opinion.'" *Burgess*, 537 F.3d at 129. "Failure to provide such 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id.* at 129-130.

Contrary to Plaintiff's contentions, the ALJ properly determined Plaintiff's RFC and correctly determined that Dr. Martin's opinion were entitled to no weight. As more fully discussed in the Report and Recommendation, at the time Dr. Martin provided her February 16, 2011 medical source statement, Dr. Martin stated that she treated Plaintiff every three months. *See* Tr. at 377. However, at the time she provided the statement, Dr. Martin had treated Plaintiff only once before, on November 16, 2010, and then once on the date of the statement. *See id.* at 377, 510-11. Dr. Martin diagnosed Plaintiff with diabetes, painful feet, frozen shoulder, and diabetic neuropathy. *See id.* at 377. Dr. Martin also noted symptoms of "pain with walking, feet painful, [decreased] sensation fingers, toes[,] mood swings, stumbles often when standing up[,] decreased range of motion right shoulder, pain right arm." *Id.* at 378. Dr. Martin opined that Plaintiff was limited to sitting for four hours, standing/walking for zero to one hour, and recommended Plaintiff not sit, stand, or walk continuously and she should get up and move around every twenty minutes and could sit again after five minutes. *See id.* at 379-80. Further, Dr. Martin opined that Plaintiff could occasionally lift zero-to-ten pounds and occasionally carry zero-to-five pounds. *See id.* at 380. She further found that Plaintiff had moderate limitations in grasping, turning, twisting objects, minimal limitations in using her fingers and hands for fine manipulations, and marked limitations in using her arms for reaching, including overhead. *See id.* at 380-81. Dr. Martin providing several additional limitations in July 2011 and October 2012, including the need for Plaintiff to regularly adjust her position and the fact that she could sit for four hours in an eight-hour day. *See id.* at 507, 535-37.

As Magistrate Judge Dancks correctly concluded, the ALJ provided good reasons for assigning "no weight" to Dr. Martin's earlier opinion. *See* Tr. at 573. The ALJ discussed the inconsistencies between Dr. Martin's opinion and her own treatment notes. For example, Dr. Martin did not document any musculoskeletal examination on November 16, 2010, February 16, 2011, or July 13, 2011. *See id.* at 508-12. Further, there was a lack of objective or laboratory findings to support Dr. Martin's limitations with lifting, carry, sitting and standing and Dr. Martin does not indicate any dizziness, or other notations in her limited exam and treatment notes. *See id.* Thereafter, in her opinion dated October 29, 2012, Dr. Martin notes that Plaintiff's right "frozen shoulder" has "yet to be evaluated." *Id.* at 533.

The ALJ further considered Plaintiff's activities of daily living, which were inconsistent with Dr. Martin's opinion. During the relevant time period, Plaintiff completed a CNA program, did house work, shopped, walked three miles per day for exercise, continued driving herself, read books and watched television. *See id.* at 52, 57, 75-76, 81, 326, 328-29, 478, 538. As such, as set forth more fully in Magistrate Judge Dancks' Report and Recommendation, the Court finds that the ALJ properly afforded Dr. Martin's opinions "no weight," since they were contradicted by the weight of other record evidence. *See* 20 C.F.R. § 404-1527(c)(2).

Plaintiff also argues that the ALJ erred in giving "little weight" to the opinion of her treating endocrinologist, Dr. Mols-Kowalczewski "because the ALJ found these opinions inconsistent with treatment records that did not reflect arm numbness, difficulty walking, or diminished extremity strength." Dkt. No. 18 at 4-5. As with the opinion of Dr. Martin, the ALJ properly afforded the opinion of Dr. Mols-Kowalczewski "little weight." In doing so, the ALJ reviewed and discussed Dr. Mols-Kowalczewski's length, nature, and extent of the treating relationship with Plaintiff, as well as the consistency of her opinion with other evidence. *See* Tr.

10

at 564, 572. In her opinion Dr. Mols-Kowalczewski noted Plaintiff had diminished sensation in her extremities and high blood sugars after supper, however there were no corresponding notes in her own treatment records. *Id.* at 470, 527. Further, Plaintiff's primary care physician's notes during the relevant period indicated that Plaintiff's diabetes was managed on an insulin pump, she had no dizzy spells or fainting, no vision problems, full range of motion with her musculoskeletal system and no mention was made that Plaintiff had any problems walking approximately three miles per day or that she had any problems with her extremities. *Id.* at 487-491. Additionally, the ALJ noted that Plaintiff herself testified to her daily activities during the period in question, including participating in and completing a CNA program that "required her to attend classes for six to ten weeks, five days a week, for three hours a night" and noted that "[s]he could drive, travel alone, grocery shop and carry groceries, [] manage funds," could walk approximately one mile and did not need assistive devices. *Id.* at 47, 51-54, 78, 86-87, 328-339.

As set forth more fully in Magistrate Judge Dancks' Report and Recommendation, the Court finds that the ALJ properly considered the regulatory factors in assigning Dr. Mols-Kowalczewski's opinion little weight. Contrary to Plaintiff's contentions, the ALJ fully considered the factors provided in 20 C.F.R. § 404.1527(c) in determining what weight, if any, the opinions of Drs. Martin and Mols-Kowalczewski were to be afforded.

Finally, Plaintiff contends that the ALJ failed to point to specific evidence in support of the RFC determination that Plaintiff was capable of performing light work during the relevant time period. *See* Dkt. No. 18 at 6-8. Plaintiff contends that the ALJ "could not rely on her lay conclusion that unspecified 'objective' and other medical evidence supports fewer restrictions than the consistent opinions from two treating doctors, including a board-certified specialist." *Id.* at 6-7. The Court disagrees. As Magistrate Judge Dancks correctly found, the ALJ thoroughly

11

described the treating source and other record evidence which supported the RFC. *See* Tr. at 570-72.

### 3. *The ALJ's Credibility Determination*

Plaintiff argues Magistrate Judge Dancks incorrectly recommended that the Court find that the ALJ properly discounted her statements regarding the nature and severity of her conditions. *See* Dkt. No. 18 at 8-10. "In particular, Judge Dancks [found] the ALJ did not err in finding [Plaintiff's] allegations not credible because (1) Plaintiff only employed limited use of medications; (2) she underwent little treatment for her right shoulder impairment; and, (3) [Plaintiff] stopped working because her employer moved out of state and she collected unemployment benefits." *Id.* at 8-9.

The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and other limitations, and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant. *See Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). The regulations set out a two-step process for assessing a claimant's statements about pain and other limitations:

> At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. . . . If the claimant does suffer from such an impairment, at the second step, the ALJ must consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record. The ALJ must consider statements the claimant or others make about his impairments, his restrictions, his daily activities, his efforts to work, or any other relevant statements he makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony in its administrative proceedings.

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (quotations and citations omitted).

12

If a plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: (1) daily activities; (2) location, duration, frequency, and intensity of any symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of any medications taken; (5) other treatment received; and (6) other measures taken to relieve symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vi). The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether the plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence. *See* SSR 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, *2 (Soc. Sec. Admin. Jul. 2, 1996). One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the record. *Id.* at *5.

"After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony." *Saxon v. Astrue*, 781 F. Supp. 2d 92, 105 (N.D.N.Y. 2011) (citing, *inter alia*, 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4)). An ALJ rejecting subjective testimony "'must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence.'" *Melchior v. Apfel*, 15 F. Supp. 2d 215, 219 (N.D.N.Y. 1998) (quoting *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)). The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and her own activities

13

during the relevant period. *See Howe-Andrews v. Astrue*, No. CV-05-4539, 2007 WL 1839891, *10 (E.D.N.Y. June 27, 2007). With regard to the sufficiency of credibility determinations, the Commissioner has stated that

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *2.

In the present matter, at the first step, the ALJ found that Plaintiff's medically determined impairments could reasonably be expected to cause the symptoms alleged by Plaintiff. *See* Tr. at 568. At the second step, however, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible. *See id.* at 568-70. Plaintiff contends, as she did before Magistrate Judge Dancks, that the ALJ improperly accounted for Plaintiff's activities of daily living and improperly discounted Plaintiff's lack of treatment regarding her should complaints. Dkt. No. 18 at 9. Plaintiff further argues that the ALJ erred in relying heavily on evidence that Plaintiff lost her job when her employer relocated rather than due to her medical condition and further erred in ignoring Plaintiff's testimony that, even before she stopped working, she was only able to perform her duties with the assistance of others at least twice a day. *See id.* at 9-10.

Contrary to Plaintiff's contentions, the ALJ applied the appropriate standards and her credibility determination was supported by substantial evidence. *See* Tr. at 568-70. In making this determination, the ALJ considered Plaintiff's limited use of medication, limited course of

14

treatment for her right should complaints, and the numerous discrepancies in Plaintiff's various statements and in her testimony with regard to the nature and scope of her blood sugar control and her daily activities. *See id.*; *see also* 20 C.F.R. § 404.1529; SSR 96-4p; SSR 96-7p. As discussed more fully in Magistrate Judge Dancks Report and Recommendation, Plaintiff engaged in extensive daily activities during the relevant time frame, including walking three miles per day, driving, caring for her grandchildren, completing a six-to-ten-week certified nursing assistant course that required her to attend three-hour classes five days per week, grocery shopping, reading and watching television, doing some household chores including cooking and vacuuming, and doing laundry with some assistance. *See* Tr. at 47-48, 52, 54, 56, 78, 326-28. Further, in September of 2010, Plaintiff testified that she had no problems sitting, that she could walk a mile or so, and that she did not need any assistive devices to stand or walk. *See id.* at 53. As the ALJ correctly determined, these extensive daily activities clearly undermine Plaintiff's claim of total disability.

Further, Plaintiff testified that she only stopped working in November of 2008 because her employer relocated. *See id.* at 54, 76. Thereafter, Plaintiff collected unemployment benefits certifying that she was ready and willing to work, but now she claims that she was unable to work. Courts in the Second Circuit have regularly found that a social security disability claimants collection of unemployment benefits may be considered in determining the claimant's credibility. *See House v. Comm'r of Soc. Sec.*, 32 F. Supp. 3d 138, 154 (N.D.N.Y. 2012); *Bell v. Astrue*, No. 5:12-cv-25, 2013 WL 1352354, *10-*11 (D. Vt. Mar. 6, 2013) (citing cases); *Bowden v. Comm. of Soc. Sec.*, 174 F.3d 854, 1999 WL 98378, *8 (6th Cir. 1999) ("[T]his court recognize[s] the inherent inconsistency in filing for disability benefits and unemployment benefits. Although Plaintiff argues that this inconsistency should not be embraced, she offers no reasonable

explanation of how a person can claim disability benefits under the guise of being unable to work, and yet file an application for unemployment benefits claiming that she is ready and willing to work") (citation omitted). Generally, a plaintiff with a significant work history is usually entitled to substantial credibility when claiming inability to work. *See Rivera v. Schweiker*, 717 F.2d 719, 725 (2d Cir. 1983) (citation omitted). In this case, however, Plaintiff's unemployment benefits application and her own testimony significantly undercut her claims that she was unable to work during the timeframe at issue, as the ALJ correctly determined.

Based on the foregoing, the Court finds that the Commissioner's credibility determination was supported by substantial evidence and based on the correct legal standards.

### *4. Vocational Expert Testimony*

In his objections, Plaintiff argues that Magistrate Judge Dancks incorrectly determined that the ALJ did not err in relying on testimony from the vocational expert in determining that Plaintiff could perform other work (after finding that she could not perform her past work). *See* Dkt. No. 18 at 10-13.

"At Step Five, the Commissioner must determine that significant numbers of jobs exist in the national economy that the claimant can perform." *McIntyre v. Colvin*, 758 F.3d 146, 151 (2d Cir. 2014) (citing 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v)). An ALJ may make this determination either by applying the Medical Vocational Guidelines (the "Grids") or by adducing testimony of a vocational expert. *See McIntyre*, 758 F.3d at 151. "An ALJ may rely on a vocational expert's testimony regarding a hypothetical as long as 'there is substantial record evidence to support the assumption[s] upon which the vocational expert based his opinion,' . . . and accurately reflect the limitations and capabilities of the claimant involved[.]" *Id.* (internal quotation and other citation omitted).

16

The Second Circuit has held "that the ALJ cannot rely on the Grids if a non-exertional impairment has any more than a 'negligible' impact on a claimant's ability to perform the full range of work, and instead must obtain the testimony of a vocational expert." *Selian v. Astrue*, 708 F.3d 409, 421 (2d Cir. 2013) (quoting *Zabala v. Astrue*, 595 F.3d 402, 411 (2d Cir. 2010)) (other citation omitted). "A nonexertional impairment is non-negligible 'when it ... so narrows a claimant's possible range of work as to deprive him of a meaningful employment opportunity.'" *Id.* (quotation omitted).

In the present matter, the ALJ properly obtained the testimony of a vocational expert to determine whether jobs existed in the national economy for an individual with Plaintiff's age, education, work experience, and established RFC. *See* Tr. at 59-61, 576-81. The vocational expert clearly opined that there were at least three jobs in the national economy Plaintiff could perform considering her limitations set forth in the RFC. *See id.* at 64-66.

Plaintiff contends that the vocational expert gave contradictory responses to two nearly identical hypothetical questions. *See* Dkt. No. 18 at 11-12. The ALJ initially asked the vocational expert what type of jobs existed for a hypothetical claimant who, among other things, could "stand/walk six hours within an eight-hour workday, but no more than 20-25 minutes at one time before alternating to sitting for 15 minutes. Can sit for six hours within an eight-hour workday." Tr. at 62. The expert responded by identifying the jobs that such a hypothetical claimant could perform, and the ALJ properly relied on this testimony in finding Plaintiff not disabled at Step Five of the sequential evaluation because the hypothetical appropriately included the limitations as determined by the ALJ in the RFC. *See id.* at 64, 578.

Plaintiff's representative then asked the vocational expert whether Plaintiff could work if she needed "[10]-15 minutes, unscheduled breaks, let's say, every half hour for about 10-15

17

minutes where she could sit down and take pressure off her feet because of the neuropathy in her feet?" *Id.* at 69. The expert responded that, "[i]f I understand the hypothetical, every 20 minutes she would have to take a break and basically get off her feet for 10-15 minutes including elevation, if I'm understanding that correctly, that would preclude all positions at all skill levels." *Id.*

Initially, as Magistrate Judge Dancks correctly noted, Plaintiff's representative's hypothetical questions were not based upon the RFC as determined by the ALJ. Further, as Magistrate Judge Dancks found, the hypothetical questions posed to the vocational expert by the ALJ and Plaintiff's representative were not "nearly identical" as Plaintiff claims. The ALJ's initial question did not mention "unscheduled breaks" or the requirement that Plaintiff elevate her feet. *See* Tr. at 62. Rather, the ALJ's hypothetical described a sit/stand option throughout the work day, whereas the question from Plaintiff's representative specifically asked about regular, unscheduled, off task breaks. *See id.* at 62, 69. As such, contrary to Plaintiff's contentions, the vocational expert's responses were not contradictory.

Moreover, although Plaintiff is correct that the vocational expert identified the wrong code in the Dictionary of Occupational Titles when discussing Plaintiff's past relevant work, the error was harmless. *See id.* at 59-61. A plain reading of the vocational expert's testimony demonstrates that his opinion that Plaintiff acquired transferable skills was clearly based on Plaintiff's own description of her past work, not the DOT code applicable to her past job. *See Lewis v. Comm'r of Soc. Sec.*, No. 6:00-cv-1225, 2005 WL 1899399, *4 n.11 (N.D.N.Y. Aug. 2, 2005); SSR 82-41 ("The claimant is in the best position to describe just what he or she did in [her past relevant work], how it was done, what exertion was involved, what skilled or semiskilled work [activities] were involved, etc. ... An occupational title by itself ... is [not] sufficient").

At the hearing, the vocational expert noted that Plaintiff acquired work skills from her job as a heat treat operator included placing materials in machines and operating, supervising and/or managing machines, which was consistent with Plaintiff's testimony. Further, Plaintiff's representative questioned the vocational expert whether the fact that Plaintiff did not operate the machine or conveyor belt, with the exception of pushing buttons to control the needle temperature, would affect his opinion. The vocational expert testified that there would be no change in his opinion and that the job as a heat treat operator was a very low level position given the Specific Vocational Preparation ("SVP") designation of SVP-3, which is the lowest level of semi-skilled work available. *See* Tr. at 715-16.

In short, the ALJ's decision identifies the skills Plaintiff acquired and how those skills transfer to the jobs identified by the vocational expert, as required by SSR 82-41. As Magistrate Judge Dancks correctly determined, where, as here, the ALJ set forth with sufficient specificity the claimant's acquired vocational skills and made sufficiently specific findings about their transferability, remand to the commission is not warranted. *See Draegert v. Barnhart*, 311 F.3d 468, 472-77 (2d Cir. 2002).

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, Magistrate Judge Dancks' Report and Recommendation, Plaintiff's objections and the applicable law, and for the reasons stated above, the Court hereby

**ORDERS** that Magistrate Judge Dancks' Report and Recommendation (Dkt. No. 17) is **ADOPTED** in its entirety; and the Court further

**ORDERS** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in the Commissioner's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with Local Rules.

**IT IS SO ORDERED.**

Dated: March 28, 2019
      Albany, New York

*Mae A. D'Agostino*
Mae A. D'Agostino
U.S. District Judge